AO 91 (Rev. 11/11) Criminal Complaint



FILED
1/6/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

TD

AUSA Mary Katherine McClelland (312) 353-0517
AUSA Brian Williamson (312) 353-8897

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DIAMOND ANDERSON,<br>  also known as "Star," and<br>KACIE CAVANERO | CASE NUMBER: 1:25-cr-00013<br><br>**UNDER SEAL** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT ONE

On or about February 9, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, DIAMOND ANDERSON, also known as "Star," violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 | knowingly and intentionally distributing a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance |

### COUNT TWO

On or about February 9, 2024, at Chicago, in the Northern District of Illinois, Eastern Division, KACIE CAVANERO violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | knowingly and intentionally distributing a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance |

This criminal complaint is based upon these facts:

　X　 Continued on the attached sheet.

*Chung S. Kim*
CHUNG S. KIM
Special Agent, Homeland Security Investigations (HSI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: January 6, 2025

*Judge's signature*

City and state: Chicago, Illinois

Jeffrey T. Gilbert, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, CHUNG S. KIM, being duly sworn, state as follows:

1. I am a Special Agent with the Department of Homeland Security – Immigration and Customs Enforcement – Homeland Security Investigations ("HSI") and have been so employed since 2019. I am currently assigned to HSI's Gangs and Violent Crimes Task Force and, as part of my duties as an HSI Special Agent, I investigate criminal violations relating to narcotics offenses, including Title 21, United States Code, Section 841.

2. This affidavit is submitted in support of a criminal complaint alleging that DIAMOND ANDERSON, also known as "Star," violated Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2, and KACIE CAVANERO violated Title 21, United States Code, Section 841(a)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging ANDERSON and CAVANERO with distribution of heroin and fentanyl, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and in law enforcement records, review of

body worn camera footage, surveillance video, and photographs, review of laboratory analysis, review of public records databases, and my training and experience, as well as the training and experience of other law enforcement agents.

4. Since approximately April 2023, law enforcement, including HSI and the Chicago Police Department ("CPD"), has been investigating a faction of the Traveling Vice Lords street gang (the "drug trafficking organization" or "DTO") involved in the operation of an open-air drug market on the corner of West Chicago Avenue and North St. Louis Avenue (the "Chicago and St. Louis drug spot" or "the drug spot"). This investigation included court-authorized wire interceptions of phone number (872) 202-4490 ("Target Phone 1"), which was used by DIAMOND ANDERSON to arrange the distribution of over 50 grams of heroin and fentanyl by KACIE CAVANERO to an undercover law enforcement officer ("UC-10") on February 9, 2024.

5. On February 9, 2024, at 3:14 p.m. (call session #10230), UC-10 called ANDERSON on Target Phone 1.[1] During their conversation, UC-10 asked, "Hey,

---

[1] Law enforcement officers identified ANDERSON as the user of Target Phone 1 based on the following:

The subscriber information for Target Phone 1 lists the subscriber address as 4031 West Gladys Avenue, Apartment 3 in Chicago, Illinois. Based on my training and experience and the training and experience of the law enforcement officers with whom I work, I believe the subscriber address for Target Phone 1 may be a false address used by ANDERSON to avoid law enforcement detection, a previous address used by ANDERSON, or an address used by ANDERSON's associate as the billing party. For example, the subscriber information for Target Phone 1 lists "Latoya Latasha Anderson" as the Billing Party, and "Diamond Anderson" as the user, both with the same address specified above. Therefore, I believe that "Latoya Latasha Anderson" is financially liable for Target Phone 1 with the address listed above, while DIAMOND ANDERSON is the subscribed user of the phone.

2

what's up, Star?"² ANDERSON asked, "What's up?" UC-10 stated, "Hey, I need to get four…four jabs [packs of 11 to 12 zip lock bags of heroin]." ANDERSON asked, "Four

---

Moreover, according to CPD reporting, on or about May 5, 2023, at approximately 10:10 a.m., a confidential source (CS-4) purchased approximately 16 grams of suspected heroin in exchange for approximately $100 from an unidentified female, later identified as DIAMOND ANDERSON, on the 800 block of North St. Louis Avenue in Chicago, Illinois. During the course of that transaction, ANDERSON provided CS-4 with the phone number to Target Phone 1 to facilitate future narcotics transactions. ANDERSON also informed CS-4 that her nickname is "Star."

Thereafter, on or about August 30, 2023, at approximately 10:00 a.m., according to CPD reporting, LEOs conducted an identification stop on ANDERSON on the 800 block of North St. Louis Avenue. During the identification stop, ANDERSON stated to officers that her name is "DIAMOND ANDERSON." Based on officers' comparison of a known photograph obtained from the Chicago Police Department Data Warehouse with their observations of ANDERSON during the stop, officers concluded that ANDERSON is the person who was stopped by officers.

Later that same day, August 30, 2023, at approximately 10:35 a.m., CS-4 purchased approximately 21 bags of suspected heroin in exchange for $100 from ANDERSON. Based on my review of the Illinois State Police Laboratory report, the narcotics purchased from ANDERSON on August 30, 2023, had a net weight of approximately 13.3 grams and contained a mixture of heroin and fentanyl.

CS-4 began cooperating in this investigation on or about July 27, 2022, and has numerous arrests and multiple convictions, including multiple narcotics-related convictions. According to CS-4, he/she is an associate of the Traveling Vice Lords, but is not involved in narcotics trafficking activities of the Traveling Vice Lords. The information provided by CS-4 was corroborated and proved reliable by other cooperating witnesses, physical surveillance, telephone records, and other publicly available records. CS-4 is cooperating in this investigation in potential exchange for payment. To date, for this investigation, CS-4 has been paid approximately seven times totaling $790 for his/her cooperation, and no further promises have been made regarding any potential benefit he/she may receive for his/her cooperation.

² The transcripts of the conversations described in this affidavit remain in draft form. To the extent quotations from the conversations are included, they are preliminary, not final. The summaries of recorded conversations in this affidavit do not include references to all of the topics covered during the conversations. In certain instances, I will offer my interpretations of certain recorded conversations in brackets and otherwise. My understanding of these conversations is aided by the contents and context of the conversations, my familiarity with the facts and circumstances of the investigation, my experience as a law enforcement agent, my discussions with other law enforcement agents and officers, the experience of other law enforcement agents and officers in this investigation, and other evidence developed during the course of the investigation. The times listed for the recorded conversations are approximate.

packs?" UC-10 replied, "Yup." ANDERSON asked, "You want four packs of purple [$10 bags of heroin]?" UC-10 replied, "Yeah, four packs of purple." ANDERSON stated, "Alright, I'm about to call you back in five minutes."

6. Based on the intercepted call described above, my knowledge of the investigation, and my training and experience, I believe that UC-10 requested to purchase heroin from ANDERSON. Furthermore, based on the investigation to date, I believe a pack refers to approximately 11 to 12 zip lock bags of heroin.

7. Less than a minute later (call session #10231), ANDERSON used Target Phone 1 to call CAVANERO at (312) 885-2550 ("Subject Phone 3").[3] During the conversation, ANDERSON asked, "Did you put the two hundred back yet?" CAVANERO replied, "I ain't put no two hundred back." ANDERSON stated, "Oh you ain't put it back? I got a P [a narcotics customer]. Who got the purple [$10 bags of

---

[3] According to CPD reporting, on August 15, 2023, at approximately 12:25 p.m., a confidential source ("CS-1") purchased approximately 12 grams of suspected heroin in exchange for $80 from CAVANERO at approximately 814 North St. Louis Avenue, in Chicago, Illinois. During the transaction, CAVANERO provided CS-1 with the phone number (312) 885-2550, which is the phone number for Subject Phone 3, to facilitate future narcotics transactions. Shortly after the transaction, at approximately 12:44 p.m., CAVANERO, utilizing Subject Phone 3, contacted CS-1 to confirm the phone number.

Based on my review of the Illinois State Police Laboratory report, the narcotics purchased from CAVANERO on August 15, 2023, had a net weight of approximately 6.8 grams and contained fentanyl.

CS-1 began cooperating in this investigation on or about July 27, 2023, and has numerous arrests and multiple convictions, including multiple felony convictions for narcotics possession. The information provided by CS-1 was corroborated and proved reliable by other cooperating witnesses, physical surveillance, telephone records, and other publicly available records. CS-1 is cooperating in this investigation in exchange for payment. To date, on this investigation, CS-1 has been paid $800 for his/her cooperation, and no further promises have been made regarding any potential benefit he/she may receive for his/her cooperation.

heroin]?" CAVANERO replied, "It's hot. It's real hot right now." ANDERSON responded, "I got a P now for four packs of purple, Kacie." CAVANERO stated, "Uh, hey, tell him to call me." ANDERSON stated, "Oh hell no. He ain't calling you. You pushing it." CAVANERO stated, "I mean, not call me but where he say he at?" ANDERSON stated, "He said I finna see. I was calling you to see if…did you want this [to conduct the transaction]? Get this." CAVANERO stated, "I don't…[unintelligible] but I want it." ANDERSON replied, "But let me call."

8. Based on the intercepted call described above, my knowledge of the investigation, and my training and experience, I believe that ANDERSON was not currently at the drug spot and therefore informed CAVANERO of UC-10's request to purchase heroin and asked if CAVANERO was interested in conducting the sale. CAVANERO replied that she would be willing to conduct the narcotics sale to UC-10.

9. According to CPD reporting, at 3:16 p.m. on February 9, 2024 (call session #10232), ANDERSON called UC-10 using Target Phone 1 and asked how long it would take UC-10 to arrive at the drug spot, and UC-10 responded it would take 20 to 30 minutes. At 3:17 p.m. (call session #10237), ANDERSON, using Target Phone 1, called CAVANERO on Subject Phone 3, stating, "He [UC-10] said 20 minutes." CAVANERO replied, "Ok. You know him, know him?" Later in the conversation, ANDERSON stated, "Girl, Kacie, if you scared to serve some Ps [narcotics customers] off my phone, don't serve him. I'm gonna give him to somebody else. I know all the Ps. I know him just like you know your Ps off the block. That's how I know these Ps

5

off the block." CAVANERO replied, "I ain't scared." ANDERSON stated, "If they the police, we won't."

10. Based on the intercepted call described above, my knowledge of the investigation, and my training and experience, I believe that ANDERSON informed CAVANERO that UC-10, the narcotics customer she was sending to CAVANERO, would arrive to the drug spot in 20 minutes. CAVANERO wanted to know if ANDERSON knew the customer well enough to sell narcotics to him. ANDERSON replied that if CAVANERO was afraid to sell narcotics to ANDERSON's customer, ANDERSON could refer the customer to a different seller. CAVANERO asserted that she was not afraid to make the sale.

11. At 3:37 p.m. on February 9, 2024 (call session #10246), UC-10 called ANDERSON stating, "Hey, Star. I'm about to pull up to Iowa [Street] now." ANDERSON replied, "Alright." She then immediately called CAVANERO on Subject Phone 3 (call session #10246) to say, "Kacie, he pulling up on Iowa," which CAVANERO acknowledged. Based on my experience and my knowledge of the investigation, West Iowa Street intersects North St. Louis Avenue approximately one block north of the drug spot.

12. According to CPD reporting, at approximately 3:38 p.m., UC-10 parked his undercover vehicle on the 3400 block of West Iowa Street.[4] About a minute later, CAVANERO walked towards UC-10's vehicle and confirmed the narcotics order with

---

[4] UC-10 was equipped with an audio and video recording device during the controlled purchase from CAVANERO.

6

UC-10. CAVANERO then jogged south on the 800 block of North St. Louis Avenue, out of UC-10's view. CAVANERO then walked back to the driver's side of the undercover vehicle and handed UC-10 20 zip lock bags sealed with purple tape and 42 zip lock bags sealed with green tape, each containing suspected heroin, in exchange for $400. Following the exchange, CAVANERO walked away from the undercover vehicle and UC-10 drove away.

  13. HSI agents submitted the suspected heroin to the U.S. Customs and Border Protection ("CBP") Laboratory for testing and analysis. Based on my review of the CBP lab report, of the 62 zip lock bags purchased from ANDERSON and CAVANERO on February 9, 2024, eight zip lock bags were tested and found to contain heroin and fentanyl.

  a. Based on my review of the CBP lab report, the average estimated net weight of the contents of the tested, purple-taped bags was approximately 1.27 grams. Based on this average estimated net weight, the total approximate net weight of the 20 purple-taped bags is 25.4 grams.

  b. Based on my review of the CBP lab report, the average estimated net weight of the contents of the tested, green-taped bags was approximately 0.75 grams. Based on this average estimated net weight, the total approximate net weight of the 42 green-taped bags is 31.85 grams.

  c. Based on these average estimated net weights, the total estimated net weight of the mixture of heroin and fentanyl sold by ANDERSON and CAVANERO to UC-10 is approximately 57.25 grams.

14. Based on the foregoing, there is probable cause to believe that:

    a. on or about February 9, 2024, DIAMOND ANDERSON knowingly and intentionally distributed a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2; and

    b. on or about February 9, 2024, KACIE CAVANERO knowingly and intentionally distributed a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperindinyl] propanamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

*Chung S. Kim*
CHUNG S. KIM
Special Agent, Homeland Security Investigations

SWORN TO AND AFFIRMED by telephone January 6, 2025.

Honorable Jeffrey T. Gilbert
United States Magistrate Judge

8